CASE 28—PETITION ORDINARY—JUNE 3.

# Perrit vs. Crouch and The Commonwealth.

### APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. In a *qui tam* action by the Commonwealth and C. against P., under section 4, chapter 42, Revised Statutes (1 *Stanton*, 563), for treble the value of six hundred dollars in United States Treasury notes, alleged to have been unlawfully lost by C., jr., by gambling on a faro bank kept by P., a judgment for eighteen hundred dollars in money is held to be erroneous, and is reversed. As the court judicially knows that the *treasury notes* lost were not equivalent to money, the judgment should have been for the amount only of the treble value of the treasury notes so lost.

2. The act of March 2, 1860 (*Myers' Sup.*, 434), provides, "*that all laws now in force that gives to the prosecutor or informer, other than the Commonwealth's Attorney, in any action for the recovery of money lost at gaming, any portion of the forfeiture, any part of a penalty for gaming consequent upon conviction, be, and the same are hereby, repealed; and that hereafter all moneys so forfeited, after payment of the necessary cost of prosecution, that went to the informer or prosecutor, other than the Commonwealth's Attorney, be, and the same are hereby, appropriated to the use and benefit of the Common School Fund of this Commonwealth.*" The unskillful and incongruous phraseology of the foregoing enactment *is construed, that it did not repeal or modify section 4, chapter 42, Revised Statutes* (1 *Stant.*, 563), to-wit: "Section IV. If such loser or his creditor do not sue for the money or thing lost within six months after its payment or delivery, and prosecute the suit to recovery with due diligence, any other person may sue the winner and recover treble the amount or value of the money or thing lost, if suit be so brought within five years from the delivery or payment. One half of what is so recovered shall be for the person suing, and the other half for the Commonwealth." * *

3. The Act of March 2, 1860, above, applies to public prosecutions or proceedings provided for in chapter 42 of the Revised Statutes, and does not affect *a suit* under section 4, of said chapter.

4.   The joinder of the name of the relator and the Commonwealth as
     co-plaintiffs, in such an action, was proper, as they were equally en-
     titled to the recovery.

E. S. WORTHINGTON,

H. MARSHALL, and

J. H. PRICE,                                      For Appellant,

CITED—

*Act of March* 2, 1860, *Myers' Sup.*, 434.

2 *Tidd*, 945; *Tomlin's Law Dic., "Costs."*

1 *Littell*, 274; *Heard vs. Faris.*

8 *Dana*, 190; *Hart vs. Flynn.*

1 *Bush*, 348; *Riley vs. Sharp.*

2 *Bush*, 532; *Hall vs. Hiles.*

2 *Duvall*, 351; *Broms vs. Commonwealth.*

4 *Mon.*, 155; *Baugh vs. Ramsey.*

3 *J. J. Mar.*, 577; *Williams vs. Beazly.*

3 *Mon.*, 167; *McChord vs. Ford.*

1 *J. J. Mar.*, 499; *Fleming vs. Campbell.*

3 *Mon.*, 149; *Lampton vs. Haggard.*

4 *Mon.*, 108; *Burnett vs. Commonwealth.*

2 *J. J. Mar.*, 531; *Bell vs. Barnett.*

7 *J. J. Mar.*, 106; *Neal vs. Durrett.*

1 *Dana*, 419; *Canterberry vs. Commonwealth.*

*Revised Statutes*, 1 *Stant.*, 273.

1 *Bush*, 102; *Dillingham vs. Mudd.*

1 *Mon.*, 82; *Ormsby vs. Johnson.*

9 *B. Mon.*, 76; *Kiston vs. Hildebrand.*

17 *Geo.*, 414–15; *Walker vs. Hunter.*

11 *Geo.*, 628–35; *Mitchum vs. State.*

10 *Geo.*, 521–3; *Berry vs. State.*

41 *N. H.*, 317; *Tucker vs. Henniker.*

*Hilliard on New Trials, chap.* 10, *secs.* 6, 9, 10, 13, 42.

18 *B. Mon.*, 295; *Luttrell vs. Maysville and Lex. R. R.*

2 *Bush*, 83; *Commonwealth vs. Shields.*

Perrit vs. Crouch and The Commonwealth.

*Amr. Law Reg., Oct.,* 1868, *p.* 729; *McDaniels vs. McDaniels.*

*Common School Law, art.* 10, *Myers' Sup.,* 456–7; *Ib.,* 434, 439, 441, 457.

BARNETT & EDWARDS,                                      For Appellees,

CITED—

*Rev. Stat., secs.* 4, 8, *chap.* 42, 1 *Stant.,* 565.

4 *Met.,* 114; *Barnes vs. Turner.*

*Myers' Code, p.* 362, *note a ;* 355, *note f.*

*Rev. Stat., sec.* 13, *chap.* 25, 1 *Stant.,* 288.

1 *Met.,* 396; *Brandies, &c., vs. Stewart.*

1 *Monroe & Harlan's Digest, p.* 218.

*Hardin,* 588; *Taylor vs. Giger.*

3 *Mar.,* 396.; 3 *Mon.,* 415; 3 *J. J. Mar.,* 393.

17 *United States Digest, p.* 419, *sec.* 6 ; 3 *Sneed,* 681.

*Constitution of Kentucky, sec.* 37, *art.* 2.

1 *Met.,* 649; *Gill vs. Johnson.*

3 *Met.,* 61; *Lee vs. Wade.*

*Civil Code, sec.* 120, *and notes.*

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

This is a *qui tam* action by the Commonwealth and C. R. Crouch, sr., against Henry Perrit, for treble the value of United States Treasury notes, charged to have been unlawfully lost by C. R. Crouch, jr., by gambling on a faro bank kept by Perrit, and thereupon paid to him more than six months before the institution of the suit, and for which neither the loser nor any of his creditors ever sued. On an issue formed by a traverse of the petition, a jury returned a verdict for one thousand eight hundred dollars, just three times the nominal amount of the notes lost and paid; and the circuit court, overruling a motion for a new trial, rendered judgment against the

appellant for that amount in money. The loser was the only witness who sustained the allegations of the petition, and he testified that he lost and paid federal paper to the nominal amount of six hundred dollars, and also stated facts conducing to show that the appellant occupied and used the gaming-house and faro bank. His testimony, though assailed, and, to some extent, discredited, yet, if accredited, authorized a verdict against the appellant, and the jury had the exclusive right to weigh the credibility of the testimony.

But the verdict was exorbitant. The statute, under which the action is prosecuted, authorizes the recovery of treble the value of the property lost; and the court knows that the thing lost was not equivalent to money; therefore, we must adjudge that one thousand eight hundred dollars in money, for which the judgment was rendered and might be enforced, exceed the treble value of six hundred dollars in treasury notes; consequently, the amount of the judgment is erroneously excessive to the prejudice of the appellant, and, on that ground, must be reversed.

But as the case will be remanded for another trial, we must decide other questions which may recur on the next trial.

1st. The appellant insists that the right to maintain this action, as brought, was taken away by an act of March 2, 1860 (*Myers' Sup.,* p. 434), in these words: "That all laws now in force that *gives* to the prosecutor or informer, other than the Commonwealth's Attorney, in an action for the recovery of money lost at gaming, any portion of the forfeiture, any part of the penalty for gaming, consequent upon conviction, be, and the same are hereby, repealed; and that hereafter all moneys so forfeited, after payment of the necessary cost of prosecu-

tion, that went to the informer or prosecutor, other than the Commonwealth's Attorney, be, and the same are hereby, appropriated to the use and benefit of the Common School Fund of this Commonwealth."

The first section of the act against gaming (1 *Stanton's Rev. Stat.*, 560) makes the payment of money or transfer of property to the winner of property won by betting on any unlawful game, *void*.

The second section authorizes the loser or his creditor to sue for and recover the thing so bet and lost, " within five years after the payment, transfer, or delivery."

The fourth section provides, that " if such loser or his creditor do not sue for the money or thing lost within six months after the payment or delivery, and prosecute the suit to recovery with due diligence, any other person may sue the winner and recover treble the amount of value of the money or thing lost, if suit be so brought within five years from the delivery or payment. One half of what is so recovered shall be for the person suing, and the other half for the Commonwealth."

The sixth section denounces against any person who shall set up a gaming table, or other contrivance used for betting, a penalty of five hundred dollars, imprisonment, infamy, and disfranchisement ; and also provides for the seizure, forfeiture, and confiscation of any such gambling projection, and all property staked on it, and divides the proceeds equally between the seizer and the Commonwealth.

. The eighth section gives to the *prosecutor, on an indictment* under either the sixth or seventh section, one half, and to the Commonwealth's Attorney one fourth, of " the fine recovered."

And other sections make provision for fines and forfeitures for other acts facilitating gaming.

Perrit vs. Crouch and The Commonwealth.

Considering all the provisions of the general and very comprehensive statute for preventing the pestilent practice of gaming, the unskillful and incongruous phraseology of the foregoing enactment of 1860 leaves the precise legislative intent rather vexatiously obscure ; but, guided in this labyrinth by the cardinal principles of interpretation, we presume that the Legislature did not intend to repeal or modify the fourth section of the general statute, or in any way affect the rights of the person suing under that provision.

· We could not reasonably impute a purpose to aid the gambler by taking from strangers the mercenary motive furnished by that section for exposing violations of the statute for the prevention of gambling. Without that incentive, few men would encounter all the responsibilities incident to a service so unwelcome and perilous. This consideration fortifies what we consider the literal construction of the statute of 1860, which apparently restricts its application to technical informers and prosecutors in penal proceedings for public wrongs, and does not extend to civil suits for individual relief or personal benefit. Such is the import of the leading words " forfeiture," " penalty," " conviction." A civil action under the fourth section is not for a forfeiture, nor is it for a technical penalty. The object of that section is not munitory, but rather remunerative, for encouraging actions invited by its rewards; and " conviction" implies a judicial sentence of condemnation for a public *delictum*. This is the only interpretation essentially consistent with the context and spirit of the entire enactment, and the only one which would harmonize them with the act of 1860, or make its infelicitous phraseology intelligible and consistent.

The sixth and seventh sections expressly denounced penalties and forfeitures, enforceable by indictment, as other proceedings for the Commonwealth; and the eighth section gives to a prosecutor on an indictment, who makes himself liable for costs, one half of the fine, and the prosecuting attorney one fourth; and, as it dispenses with the necessity of a prosecutor responsible for costs, and seems, therefore, to rely on the attorney's vigilance, stimulated by his fee, as sufficient for public justice and security, we can see a consistent motive for appropriating, in such cases, to common schools, all that *might have gone to an informer or a prosecutor;* and such only is, in our opinion, the constructive effect of the act, of 1860. That act, therefore, does not affect this action. It applies only to public prosecutions or proceedings; and no such prosecution for public wrong can affect the private right secured by the fourth section; and a judgment for the private right, and a conviction for the public wrong, are perfectly consistent, and both may be enforced.

2d. There is no misjoinder in the petition. The relator and the Commonwealth being equally entitled to the recovery, the joinder of both as co-plaintiffs was proper; but, as before indicated, the judgment is reversed for excess, and the cause remanded for a new trial.